UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
**PAMELA PIKE and SALLY ZISCHKE,**           )
**individually and as representatives of a**     )
**proposed collective action,**                 )
)
    **Plaintiffs,**                           )
)     **Civil Action No.**
    **v.**                                    )     **12-12226-FDS**
)
**NEW GENERATION DONUTS, LLC,**              )
**CADETE ENTERPRISES, INC., and**            )
**JOHN CADETE, individually and in his**     )
**capacity as manager,**                     )
)
    **Defendants.**                          )
_____)

MEMORANDUM AND ORDER ON
MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION

**SAYLOR, J.**

This case involves claims by two former managers of Dunkin' Donuts stores against their

former employer for allegedly denying them overtime pay in violation of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 207(a).  In October 2012, plaintiffs filed suit in state court

as representatives of a proposed class pursuant to Mass. R. Civ. P. 23.[1]  Along with the FLSA

claim, the complaint alleges that defendants intentionally failed to pay plaintiffs their earned

hourly wages as required by the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, and

intentionally failed to pay them overtime wages as required by the Massachusetts Fair Minimum

Wage Act, Mass. Gen. Laws ch. 151, § 1A.  After defendants removed the case to this Court in

---

[1] As discussed below, it is well-established that claims alleging FLSA violations must be brought as
"collective actions" under 29 U.S.C. § 216(b) instead of class actions under Fed. R. Civ. P. 23 and state analogues.
*See, e.g.*, *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 58 (1st Cir. 2013) ("Rule 23 and the FLSA impose
different certification requirements . . . .").

November 2012, the parties mutually agreed to stay the case pending the outcome of a related matter involving nearly identical claims, *Marzuq v. Cadete Enterprises, Inc.*, 2013 WL 5437034 (D. Mass. Sept. 25, 2013), *rev'd*, 807 F.3d 431 (1st Cir. 2015).  In January 2016, the stay was lifted when the First Circuit issued its opinion in *Marzuq*.  On January 25, 2016, plaintiffs filed notices of consent pursuant to 29 U.S.C. § 256(b) and moved to conditionally certify a collective action pursuant to 29 U.S.C. § 216(b).

Defendants contend that the motion should be denied because, among other reasons, the two-year limitations period for non-willful FLSA violations expired before plaintiffs "commenced" their collective action by filing notices of consent.  Plaintiffs contend that the Court should equitably toll the limitations period because the case was stayed.  For the following reasons, the motion will be denied.

## I.      Background

### A.      Factual Background

The facts, which closely resemble those previously considered by this Court and the First Circuit in *Marzuq*, are taken from the complaint and the plaintiffs' affidavits.[2]  Plaintiff Sally Zischke worked as a Dunkin' Donuts store manager in Massachusetts from November 2009 to June 2011.  (Zischke Aff. ¶ 2).  Plaintiff Pamela Pike worked in the same position at a different Dunkin' Donuts store from March 2011 to May 2011.  (Pike Aff. ¶ 2).[3]  Both Dunkin' Donuts

---

[2] When considering motions to conditionally certify collective actions pursuant to 29 U.S.C. § 216, "the initial stage determination is based 'only on the pleadings and any affidavits which have been submitted.' . . .  At this stage, courts do not need to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented."  *Trezvant v. Fidelity Emp'r Servs. Corp.*, 434 F. Supp. 2d 40, 43 (D. Mass. 2006) (quoting *Kane v. Gage Merch. Servs., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001)).  Accordingly, in resolving this motion, the Court assumes all non-conclusory facts alleged by plaintiffs to be true.

[3] The parties dispute whether Pike was a store manager.  The complaint alleges that Pike was a training manager.  (Compl. ¶ 24).  In her affidavit, Pike states that she was a store manager.  (Pike Aff. ¶ 2).  Defendants contend that Pike was actually an assistant manager.  (Resendes Aff. ¶ 5).  For the purposes of the present motion, the Court will assume Pike held the same store manager position as Zischke.

stores were franchises owned and operated by two corporate entities—New Generation Donuts, LLC and Cadete Enterprises, Inc.—whose common president is John Cadete.

Pursuant to agreements that they signed with Cadete Enterprises, Pike and Zischke were expected to work "*no less than* a six day, 48 hour work week." (Zischke Employment Agreement ¶ 1; Pike Aff. ¶ 3) (emphasis in original). However, plaintiffs contend that they frequently worked seven days and more than 60 hours per week because they were forced to cover the shifts of absent hourly employees. (Pike Aff. ¶ 3; Zischke Aff. ¶ 3). While plaintiffs were formally employed as store managers, the complaint alleges that they spent much of their time serving customers, working the cash registers, making coffee, and cleaning restrooms. (Pike Aff. ¶ 4; Zischke Aff. ¶ 4). The complaint also alleges that plaintiffs had little or no discretion in performing their managerial duties because they were closely supervised by a district manager who had final authority over staffing levels, maintenance, payroll, inventory, and the hiring and firing of hourly employees. (Pike Aff. ¶¶ 5-6; Zischke Aff. ¶¶ 8-14).

Plaintiffs, as managers and not hourly employees, earned weekly salaries and were not paid overtime. (Compl. ¶¶ 27-28; Zischke Employment Agreement ¶ 1). Zischke earned between $650 and $675 per week, and Pike earned $500 per week. (Zischke Aff. ¶ 6; Pike Aff. ¶ 8).

### B.   Procedural Background

On October 15, 2012, Pike and Zischke filed suit in state court alleging that defendants violated the FLSA, 29 U.S.C. § 207(a), by misclassifying them as exempt employees and refusing to pay them overtime. The complaint also alleged state-law claims for intentionally failing to pay plaintiffs their earned hourly wages as required by the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, and intentionally failing to pay them overtime wages as

3

required by the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, § 1A.  It

appears that the plaintiffs pursued all three claims as a proposed class pursuant to Mass. R. Civ.

P. 23.  (Compl. ¶¶ 10-17, 32, 41, 46) (pleading the Rule 23 requirements of numerosity,

commonality, typicality, and adequacy).  Plaintiffs did not, however, file notices of consent to

pursue a collective action under 29 U.S.C. § 216(b).

Defendants removed the case to this Court on November 30, 2012.  On January 16, 2013,

the parties filed a joint motion to stay the case pending the outcome of a related action, *Marzuq*

*v. Cadete Enterprises, Inc.*, No. 11-cv-10244-FDS, which was scheduled for a summary

judgment hearing in April 2013.  The joint motion stated that "[i]n light of the current posture of

*Marzuq* and the relatedness of the issues and claims in the two cases, the [p]arties believe that it

is in their best interests and in the interest of judicial economy to stay this matter pending the

resolution of summary judgment in *Marzuq*."  (Docket No. 6 ¶ 4).

After the Court granted summary judgment for the defendants in *Marzuq*, it lifted the stay

on September 30, 2013, and set the matter for a scheduling conference.  On October 24, 2013,

plaintiffs, represented by predecessor counsel, filed a second joint motion to stay the case.  That

motion concluded:

> On September 25, 2013 the Court in *Marzuq* ruled on the Defendant[s'] Rule 56
> Motion for Summary Judgment dismissing the Plaintiff[s'] FLSA count, a count
> common to that alleged by the Plaintiff in this action.  A final judgment has not
> been entered.
>
> This matter is now the subject of a Rule 16 scheduling conference to be held on
> November 8, 2013.  *The Plaintiffs respectfully suggest that it is in their best*
> *interests* and the interest of judicial economy to again stay this matter pending the
> exhaustion of all appellate remedies as to Count I of the Complaint in *Marzuq*.

(Docket No. 13 ¶¶ 3-4) (emphasis added).

At a conference on November 8, 2013, the Court granted that motion and

reinstated the stay.  Over the next 26 months, the parties updated the Court on the status

of the *Marzuq* appeal and repeatedly requested that the stay remain in effect.

On December 9, 2015, the First Circuit issued its opinion in *Marzuq*, vacating the

Court's summary judgment order and remanding the case for further proceedings.  On

January 19, 2016, plaintiffs' present counsel entered a notice of appearance and the

parties held a status conference, during which the stay was again lifted.

On January 25, 2016, plaintiffs filed the present motion to conditionally certify a

FLSA collective action and issue notice to other potential opt-in plaintiffs.  The same

day, both named plaintiffs filed notices of "consent to join a collective action" pursuant

to 29 U.S.C. § 216(b); those notices stated that plaintiffs "consent, agree, and 'opt in' to

become a plaintiff herein and to be bound by any judgment by the Court or any

settlement of this action."  (Docket Nos. 38-39 ¶ 1).

## II.      Analysis

### A.      FLSA Statutory Framework

The Fair Labor Standards Act requires an employer to compensate their employees "not

less than one and one-half times the regular rate at which [the employee] is employed" for each

hour worked in excess of forty hours per work-week unless those employees are exempt.  29

U.S.C. §§ 207(a)(1), 213(a)(1).  Employees who serve in a bona fide executive, administrative,

or professional capacity are exempt from the overtime requirement.  *Id.* § 213(a)(1).  Section

216(b) not only creates a private right of action for employees to recover any unpaid overtime if

their employers violate § 207, but it also provides employees with the option of bringing a

collective action:

> An action . . . may be maintained against an employer . . . in any Federal or State
> court of competent jurisdiction by any one or more employees for and [on] behalf

of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* § 216(b).[4]

FLSA "[c]ollective actions were created to promote the 'efficient adjudication of similar claims, so similarly situated employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute claims.'" *Iriarte v. Café 71, Inc.*, 2015 WL 8900875, at *2 (S.D.N.Y. Dec. 11, 2015) (quoting *Lynch v. United States Auto Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007)); *see also Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 58 (1st Cir. 2007) ("The Supreme Court has noted that the FLSA itself is meant to offset the superior bargaining power of employers both for particular employees at issue and broader classifications, and to offset the resulting general downward pressure on wages in competing businesses." (citing *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 302 (1985))).  "Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment."  *Iriarte*, 2015 WL 8900875, at *2 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010)).  It is well-established that the FLSA "states clearly that actions brought for violation of the Act cannot be brought as [Rule 23] class actions," and instead, "must be brought [as opt-in collective actions] pursuant to the procedures in [29 U.S.C. § 216]." *Trezvant*, 434 F. Supp. 2d at 57.

---

[4] Courts typically employ a two-tier approach to determine whether potential plaintiffs are "similarly situated" for certification of § 216 "opt-in" collective actions. *Trezvant*, 434 F. Supp. 2d at 42.  The initial determination "is made using a fairly lenient standard, which typically results in conditional certification of the representative class." *Id.* at 43 (citing *Kane*, 138 F. Supp. 2d at 214).  Then, "after discovery is complete, the court makes a final similarly-situated determination." *Id.* at 42.

B.    **FLSA Statute of Limitations**

The limitations period for FLSA actions is set forth in 29 U.S.C. § 255.  "Under the

[FLSA], an action for unpaid compensation must commence within two years after a cause of

action accrues and three years if the cause of action arises out of a willful violation." *Trezvant*,

434 F. Supp. 2d at 51 (citing 29 U.S.C. § 255); *see also McLaughlin v. Boston Harbor Cruises,*

*Inc.*, 2006 WL 1998629, at *1 (D. Mass. July 17, 2006) (noting that § 255 "bars an action arising

out of a claimed [ ] violation of the statute unless it is 'commenced'" within the applicable

statute of limitations).  A FLSA cause of action accrues, at the latest, when a plaintiff's

employment ends.  *See McLaughlin*, 2006 WL 1998629, at *2 ("It is not disputed that

[plaintiff's] employment with the defendants terminated in December 2002, and her cause of

action accrued as of that time at the latest.").  Thus, the limitations period began to run when

Zischke's employment with defendants ended in June 2011.[5]  Here, where the plaintiffs are not

alleging a willful violation, the FLSA's two-year statute of limitations is applicable.  (*See* Pl.

Mem. 2 n.1) ("Although the FLSA allows the statute of limitations to be extended for a third

year where there is a showing of a willful violation of the statute, plaintiffs here only seek notice

for managers who have worked for defendants in the last two years.").  Accordingly, plaintiffs

must have "commenced" their action within two years after June 2011 in order to satisfy the

statute of limitations set forth in § 255.

Section 256 defines when an action is "commenced" for purposes of the statute of

limitations:

> In determining when an action is commenced for the purposes of section 255 of
> this title, an action commenced on or after May 14, 1947 under the Fair Labor
> Standards Act of 1938 . . . shall be considered to be commenced on the date when

---

[5] Pike's employment with defendants actually ended one month earlier, in May 2011.  (Pike Aff. ¶ 2).
However, for the purposes of simplicity, the Court will consider June 2011 as the time when the FLSA cause of
action for each plaintiff accrued.

the complaint is filed; except that in the case of a collective or class action
instituted under the Fair Labor Standards Act of 1938 . . . it shall be considered to
be commenced in the case of any individual claimant—

> (a)    on the date when the complaint is filed, if he is specifically named
>        as a party plaintiff in the complaint and his written consent to
>        become a party plaintiff is filed on such date in the court in which
>        the action is brought; or

> (b)    if such written consent was not so filed or if his name did not so
>        appear—on the subsequent date on which such written consent is
>        filed in the court in which the action was commenced.

29 U.S.C. § 256.

"Thus, for a named plaintiff . . . who seeks to bring a collective action, the action is

considered commenced for limitations purposes only when two conditions have been met:  a

complaint has been filed specifically naming the person as a plaintiff *and* the person's consent

has been filed."  *McLaughlin*, 2006 WL 1998629, at *2 (emphasis in original).  While it may

seem counterintuitive to require a plaintiff named in the complaint to file a separate notice of

consent in order to commence an action and toll the statute of limitations, that is exactly what

§ 256 demands.  As Judge O'Toole noted in *McLaughlin*:

> It may seem redundant to require a named plaintiff to file a separate consent; one
> might reasonably think that the person's consent is implied sufficiently by her
> willingness to be named as a plaintiff in the complaint.  However, redundant or
> not, there is nothing ambiguous about the statute:  a collective action by a named
> plaintiff is not commenced until she has filed her written consent in addition to
> filing the complaint.

*Id.*

Similarly, most courts have strictly construed the statute and held that a named plaintiff

must file a notice of consent to commence a FLSA collective action for statute-of-limitations

purposes.  *See Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 677 (6th Cir. 2012)

(affirming district court's dismissal of a FLSA collective action because "courts construe the

[§ 256] language to do what it says:  require a named plaintiff in a collective action to file a written consent to join the collective action"); *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) (Posner, J.) ("If you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party.  It makes no difference that you are named in the complaint, for you might have been named without your consent.  The rule requiring written, filed consent is important because a party is bound by whatever judgment is eventually entered in the case . . . ."); *Thomas v. Talyst, Inc.*, 2008 WL 570806, at *4 (W.D. Wash. Feb. 28, 2008) ("The requirement to file a consent with the court, or sign the complaint, is hardly onerous or burdensome.  Regardless, wasteful or not, wise or not, it is not for the courts to rewrite unambiguous statutory language."); *Tate v. Showboat Marina Casino P'ship*, 2002 WL 31443124, at *6 (N.D. Ill. Oct. 31, 2002) ("The language of § 256 is clear:  in a representative action, a plaintiff's case is deemed to have commenced only when his or her own signed consent has been filed . . . .  Thus, regardless whether signed consents are necessary for named plaintiffs to *join* a representative action, § 256 makes clear that even for named plaintiffs signed consents are required to mark the *commencement* of the action." (emphasis in original)); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139 (D. Nev. 1999) ("It is indeed redundant and unusual to make named plaintiffs file their consents with the Court.  Notwithstanding the fact that the statutory requirements are repetitive or wasteful, they are the unambiguous requirements which Congress has duly enacted."); *see also Gessele v. Jack in the Box, Inc.*, 6 F. Supp. 3d 1141 (D. Or. 2014) ("In summary, the Court concludes plaintiffs were required to file written consents with the Court to commence their FLSA collective action; plaintiffs did not file written consents until after the applicable limitations period; plaintiffs' FLSA collective-action claims, therefore, are untimely."); *Cancilla v. Ecolab, Inc.*, 2013 WL 1365939 (N.D. Cal. Apr. 3, 2013) (same);

*Chavez v. Lumber Liquidators, Inc.*, 2011 WL 809453 (N.D. Cal. Mar. 2, 2011) (same); *Ketchum v. City of Vallejo*, 523 F. Supp. 2d 1150 (E.D. Cal. 2007) (same).

Here, plaintiffs' FLSA claims accrued, at the latest, when Zischke's employment with defendants ended in June 2011. Accordingly, plaintiffs had until June 2013 to "commence" their action by filing their complaint *and* their notices of consent to join the collective action. Plaintiffs filed their complaint in October 2012, but failed to file their notices of consent until January 2016, two and a half years after the limitations period expired.

The language of § 256 is unambiguous, and the great weight of authority provides that the statute must be strictly construed. Accordingly, plaintiffs were required to file written consents with the Court to commence an FLSA collective action, and they failed to do so until after the limitations period expired. Thus, unless equitable tolling is applicable, plaintiffs' collective-action claims are time-barred and their motion must be denied.

### C.  Equitable Tolling

Plaintiffs contend that the Court should equitably toll the limitations period from January 2013, when the case was stayed, until January 2016, when the stay was lifted. Plaintiffs further request that the Court conditionally certify a class of all persons who worked as store managers for defendants since January 2011. (Pl. Reply 4). Specifically, plaintiffs contend that the case was stayed "on defendants' initiative" and that "because the case was stayed, plaintiffs could not have filed a motion for conditional certification earlier . . . ." (Pl. Reply 3). Defendants contend that equitable tolling, which is proper only under "exceptional circumstances," is not appropriate here where plaintiffs made a "strategic decision to stay the instant litigation." (Def. Sur-Reply 2).

It is well-established that courts "should employ equitable tolling sparingly," *Bonilla v.*

*Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999), and "if [it is] available at all, [it] is

the exception rather than the rule; resort to its prophylaxis is deemed justified only in

extraordinary circumstances." *Delaney v. Matesanz*, 264 F.3d 7, 14 (1st Cir. 2001). "The

guiding principle behind the doctrine of equitable tolling is that the law should be used to

achieve some approximation of justice," *Niehoff v. Maynard*, 299 F.3d 41, 52 (1st Cir. 2002),

and the remedy is not to be used as a "means of rescuing a party who has failed to exercise due

diligence." *Guerrero-Santana v. Gonzales*, 499 F.3d 90, 94 (1st Cir. 2007). The doctrine

extends deadlines "if a plaintiff exercising reasonable diligence could not have discovered

information essential to the suit." *Bernier v. Upjohn Co.*, 144 F.3d 178, 180 (1st Cir. 1998).

Courts have applied equitable tolling in FLSA cases, but have generally limited its

application to situations where extraordinary circumstances beyond a plaintiff's control made it

impossible to file a timely claim or where a defendant's affirmative misconduct caused plaintiff

to delay filing. *See Tidd v. Adecco USA, Inc.*, 2008 WL 4286512, at *5 (D. Mass. Sept. 17,

2008) ("The plaintiffs have not alleged any extraordinary circumstance to warrant equitable

tolling nor have they pointed to any wrongdoing by the defendants that would justify a tolling

order. Indeed, the circumstances of this case are not substantially different from other FLSA

cases, and acceptance of the plaintiffs' argument would essentially mean that equitable tolling

should occur in every FLSA collective action, changing the principle of equitable tolling from

the exception to the norm."); *Blake v. CMB Constr.*, 1993 WL 840278, at *6 (D.N.H. Mar. 30,

1993) ("The Court finds that the employer's conduct in this case in failing to post the required

notice, misleading plaintiff with regard to her 'salaried' employment status, failing to correct the

obvious confusion concerning administrative staff overtime pay rights under the Act, and

engaging in a general course of conduct likely to confuse administrative staff employees with

11

regard to their overtime compensation rights, all militate in favor of applying the equitable tolling doctrine.").

Here, plaintiffs concede that defendants have not committed any affirmative misconduct that justifies equitable tolling. Rather, they contend that equitable tolling is appropriate because the stay was an extraordinary circumstance beyond their control that prevented them from timely filing notices of consent. They rely, principally, on *Israel Antonio-Morales v. Bimbo's Best Produce, Inc.*, 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009). In that case, plaintiffs, nineteen Mexican nationals who were brought to the United States by defendants pursuant to temporary agricultural worker visas, asserted claims for violation of the Trafficking Victims Protection Act and the FLSA. After the named plaintiffs filed notices of consent, the Department of Justice intervened and stayed the civil litigation pending a criminal investigation. Plaintiffs filed a motion to equitably toll the statute of limitations for potential opt-in plaintiffs who could not file notices of consent during the mandatory stay. The court equitably tolled the statute of limitations because potential plaintiffs would "be unable to join th[e] action as named plaintiffs or opt-in plaintiffs during the stay and therefore will be unable to assert their rights and preserve their FLSA claims." *Id.* at *2.

This case presents a far different set of circumstances. First, unlike in *Antonio-Morales*, where the stay was sought by the Department of Justice, a third party, plaintiffs here assented to the original joint motion to stay the case. When the stay was temporarily lifted following the Court's summary judgment order in *Marzuq*, plaintiffs moved to stay the case again on the ground, in part, that it was "in their best interests" to await the result of the appeal to the First Circuit. Second, unlike in *Antonio-Morales*, where the stay was mandatory in order to prevent civil discovery from interfering with a criminal investigation, the stay in this case was clearly

subject to modification. The Court lifted the stay once and repeatedly held status conferences with the parties to determine whether the stay remained appropriate; plaintiffs could have filed their notices of consent before agreeing to the stay or moved to lift the stay at any time to file their notices of consent. They even could have moved to conditionally certify the class and then moved for a stay before discovery. Third, in *Antonio-Morales*, the named plaintiffs did in fact file timely notices of consent, and thus clearly alerted the defendants of their intent to pursue a FLSA collective action from the outset of the litigation. Here, the named plaintiffs waited more than three years after bringing suit to file any pleading even mentioning a FLSA collective action under 29 U.S.C. § 216. In short, the stay was not an extraordinary circumstance beyond plaintiffs' control; rather, it appears to have been a strategic choice (or, possibly, a lapse of judgment by predecessor counsel).

In any event, without affirmative misconduct by the defendants or extraordinary circumstances beyond the plaintiffs' control, the application of equitable tolling is inappropriate. Accordingly, the statute of limitations bars any collective action claims, and therefore the Court will not conditionally certify a class of all Dunkin' Donuts store managers who were not paid overtime in the past five years.

## III.  Conclusion

In summary, plaintiffs were required to file written consents to "commence" their FLSA collective action under 29 U.S.C. § 256. Plaintiffs did not file written consents until January 2016, approximately thirty months after the applicable two-year limitations period ended. Their FLSA collective-action claims, are therefore untimely, and equitable tolling does not apply.

Accordingly, and for the foregoing reasons, plaintiffs' motion to conditionally certify a collective action is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
                                            F. Dennis Saylor IV
Dated: February 20, 2016                    United States District Judge